UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable William H. Alsup, Judge

| | |
|---|---|
| STATE OF CALIFORNIA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| VS. ) | NO. CV 17-3786-WHA |
| ) | |
| VALERO ENERGY CORPORATION, ) | |
| VALERO ENERGY PARTNERS, AND ) | |
| PLAINS ALL AMERICAN PIPELINE., ) | |
| ) | |
| Defendants. ) | |
| ) | |

San Francisco, California
Monday, July 10, 2017

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiff:
        CALIFORNIA DEPARTMENT OF JUSTICE
        450 Golden Gate Avenue
        San Francisco, CA  94102
BY: **PAUL MOORE**
    **DEPUTY ATTORNEY GENERAL**
    **KATHLEEN FOOTE**
    **DEPUTY ATTORNEY GENERAL**

For Defendants Valero Energy Corporation and Valero Energy Limited Partnership:
        BAKER BOTTS LLP
        1299 Pennsylvania Avenue, N.W.
        Washington, DC  20004
BY: **STEVE WEISSMAN, ESQUIRE**
    (Appeared telephonically)

.

Reported By:    Pamela A. Batalo, CSR No. 3593, RMR, FCRR
                  Official Reporter

APPEARANCES CONDINUED:

For Defendant Plains All American Pipeline:
                VINSON & ELKINS LLP
                2200 Pennsylvania Avenue NW
                Suite 500 West
                Washington, DC  20037
        **BY:  WILLIAM VIGDOR, ESQUIRE**
                (Appeared telephonically)

| | | |
|---|---|---|
| 1 | **Monday - July 10, 2017** | **3:28 p.m.** |

2              **P R O C E E D I N G S**

3                     ---oOo---

4          **THE CLERK:** For the record, calling Civil 17-3786,

5   State of California vs. Valero Energy Corporation, Valero

6   Energy Partners, and Plains All American Pipeline.

7          Counsel, can you please state your appearances.

8          **MR. MOORE:** Paul Moore for the State of California.

9          **MS. FOOTE:** Kathleen Foote.

10         **MR. WEISSMAN:** Good afternoon, Your Honor. This is

11  Steve Weissman for Valero Energy Corporation and Valero Energy

12  Limited Partnership.

13         **MR. VIGDOR:** And good afternoon, Your Honor. This is

14  William Vigdor representing Plains All American Pipeline.

15         **THE COURT:** All right. Thank you. We're here for a

16  motion for a Temporary Restraining Order by the State of

17  California, so please go ahead.

18         **MR. MOORE:** Your Honor, the lawsuit that the Attorney

19  General filed today is to enjoin a proposed transaction between

20  two corporations.

21         **THE COURT:** That you've known about for six months.

22         **MR. MOORE:** Yes, Your Honor.

23         **THE COURT:** At least.

24         **MR. MOORE:** Yes.

25         **THE COURT:** Okay. You've got a very hard argument to

|   |   |
|---|---|
| 1 | make with me.  Unless the other side is willing to put this |
| 2 | off, you may get this denied today.  You delayed, sat on your |
| 3 | hands, everything else.  You've got to explain to me why you |
| 4 | get relief at the 11th-plus hour. |
| 5 | **MR. MOORE:**  We initially sought relief about a week |
| 6 | ago -- |
| 7 | **THE COURT:**  That was on June 30th. |
| 8 | **MR. MOORE:**  Yes, sir. |
| 9 | **THE COURT:**  That was more than a week ago.  Ten days |
| 10 | ago.  And you reached some kind of an agreement to put it off. |
| 11 | **MR. MOORE:**  Which expires today at 5:00. |
| 12 | **THE COURT:**  Exactly. |
| 13 | **MR. MOORE:**  We took time to discuss a potential |
| 14 | settlement.  We sent the parties our counter-proposal to their |
| 15 | settlement offer last Friday. |
| 16 | They did not -- they responded seeking to discuss with us |
| 17 | today their interest in not pursuing a settlement decree which |
| 18 | meant that we needed to come into court to see if we could |
| 19 | enjoin the proposed transaction.  That's why we are here today. |
| 20 | **THE COURT:**  You could have brought this motion months |
| 21 | ago. |
| 22 | **MR. MOORE:**  That's correct, Your Honor, but the State |
| 23 | of California and the Federal Trade Commission were |
| 24 | investigating this proposed transaction, and until we were able |
| 25 | to complete our investigation, we didn't know whether or not -- |

1     **THE COURT:** Well, I'm sorry that you took so long.
2 I'm sorry.
3     Let me ask the lawyers for the defendants here, if I
4 deny -- listen. If I deny this today, we're going to set a
5 prompt hearing for preliminary injunction, and if you do close
6 this deal tonight, there's a good chance I will make you unwind
7 it later. Do you understand that?
8     **MR. WEISSMAN:** Yes, Your Honor.
9     **MR. VIGDOR:** We do, Your Honor.
10     **THE COURT:** So it may be on your part you would be
11 better off just agreeing to a short time period in which this
12 could be briefed in a civilized way.
13     So let me hear what you have to say. I've read what the
14 State of California has provided to me. I would like to hear
15 what you have to say.
16     **MR. WEISSMAN:** Thank you, Your Honor. This is Steve
17 Weissman for Valero.
18     On the process, I think Your Honor hit the nail on the
19 head. This transaction has been under review for ten months.
20 We've worked and cooperated closely with California from the
21 get-go.
22     We did not hear a single word about their concerns
23 until -- until the 11th hour, 11th-and-a-half hour after the
24 bipartisan Federal Trade Commission cleared the transaction.
25 They filed at the 11th-and-a-half hour, and Judge Chhabria

instructed the plaintiffs to -- if they were going to do that again, to file a couple of days in advance at least so as to give both the Court and the parties a chance to review the papers and defend themselves at a TRO motion.

We haven't even been given the papers. We haven't seen even a redacted version, and we've been asking for the papers the California AG filed on June 30th for over a week now. They're playing hide the ball. They haven't acted diligently.

And more to the point, there is no irreparable harm here nor is there likelihood of success. The assets that we're talking about are subject to long-term contracts with customers who are protected, at least through 2018, so it's not like if this transaction closes, that all of a sudden all these bad things can happen.

Again, we don't know what their papers even say, but we're assuming they're -- they say that the deal is anti-competitive, but we can't even touch the contract.

The customers themselves have written letters, including to the Federal Trade Commission, expressing non-opposition to this transaction. The California Attorney General has those letters as well.

So there is no irreparable harm here. There is not going to be any mingling of the assets, for example. There is not going to be any scrambling of the egg that you often see in merger cases, and that's in part because the parties don't even

compete in the relevant market.

Valero is a master limited partnership. They are not even in the California market today. Their parent company is a refiner -- has a refinery in Benicia, California. The other side of the ledger here, Plains, the other defendant, is a terminal operator. The parties stand in a vertical relationship, so they're not even horizontal competitors, and we're not even sure what the theory could be here.

And, again, this was reviewed thoroughly ten months by the Federal Trade Commission and the California AG, and on June 30th, the bipartisan commission let the waiting period expire and cleared the transaction, and now we're here at even beyond the 11th-and-a-half hour because of what California has done.

**THE COURT:** Is it true that you didn't serve any of these papers on the other side?

**MR. MOORE:** Yes, it is, Your Honor. And the reason is that this investigation was conducted under the federal statutes that protect -- that govern the Federal Trade Commission's investigations.

Those statutes require that information gathered through an investigation is protected. The only way we can share these papers with the parties is if we open a docket, seek a protective order, then allow the general counsel of the Federal Trade Commission to review the information and contact third

|   |   |
|---|---|
| 1 | parties whose information may be contained in this Complaint so |
| 2 | they may come in and seek a protective order -- |
| 3 | **THE COURT:** I don't believe any of that. I must say, |
| 4 | you're telling me that you can't -- you're unable to provide |
| 5 | the other side with the information you're giving me on an |
| 6 | ex parte basis to get a TRO? |
| 7 | **MR. MOORE:** We can provide them with a redacted |
| 8 | Complaint, Your Honor. |
| 9 | **THE COURT:** This is -- I don't believe this. I'm not |
| 10 | going -- I'm not going to shut down commerce -- no. That's not |
| 11 | the way it works. |
| 12 | Here is another thing that bothers me. I've got several |
| 13 | things that bother me about your papers. |
| 14 | In your proposed Temporary Restraining Order, you say the |
| 15 | following -- and I want the lawyers on the phone to listen to |
| 16 | me. I'm going to read it. It says -- this is the proposed |
| 17 | TRO: "Whereas, the parties have agreed" -- so I'm going to ask |
| 18 | you whether you agreed to this. |
| 19 | "The parties have agreed that defendants will not |
| 20 | consummate the proposed merger until after 11:59 p.m. Eastern |
| 21 | Time on the fifth business days after the Court rules on the |
| 22 | plaintiff's motion for preliminary injunction pursuant to |
| 23 | Section 13(b) of the FTC Act." |
| 24 | Is that something you agreed to, on the telephone -- you |
| 25 | lawyers on the phone? |

 1    **MR. WEISSMAN:** Not at all, Your Honor.

 2    And, in fact, this case isn't even being brought pursuant

 3    to the Federal Trade Commission Act. That sounds like the

 4    California AG took something from a draft from another case the

 5    FTC filed and then put it in, but we never agreed to that.

 6    **THE COURT:** Is that -- this document that I got today

 7    just a few -- 30 minutes ago -- you're Mr. Moore; right?

 8    **MR. MOORE:** Yes.

 9    **THE COURT:** All right. Mr. Moore, was that a mistake

10    of some sort?

11    **MR. MOORE:** That was a mistake, Your Honor.

12    Mr. Weissman is correct; this is taken from a standard document

13    filed by the FTC. However, in California, if there are -- if

14    there are no statutes or laws that address a particular area,

15    California is able to adopt federal statutes in lieu of an

16    absence of a statute under California --

17    **THE COURT:** Where does this thing come in about the

18    fifth business day after the Court rules? They never agreed to

19    that.

20    **MR. MOORE:** Your Honor, you're correct. It's a typo.

21    **THE COURT:** Typo. That's not a typo. That's a whole

22    paragraph.

23    That's just a fraud on the Court. You're trying to pass

24    something off on me here, get me to sign -- the way this was

25    presented to me -- I want you lawyers on the phone -- this was

|   |   |
|---|---|
| 1 | presented to me that you people on the phone wouldn't even be |
| 2 | on the phone.  It was presented to me that the Attorney General |
| 3 | was going to rush over here at the last minute and get a TRO |
| 4 | and was I available to sign it.  I said, *I'm not going to sign* |
| 5 | *any TRO without hearing from the other side.* |
| 6 | This was something you were going to slip by me. |
| 7 | **MR. MOORE:**  Your Honor, it was unintentional.  I |
| 8 | apologize. |
| 9 | **THE COURT:**  All right.  I'll take your word for it. |
| 10 | Here is another question I've got.  Where is there |
| 11 | anything under oath to support any kind of restraining order? |
| 12 | Is there any declaration or affidavit in this record? |
| 13 | **MR. MOORE:**  No, Your Honor. |
| 14 | **THE COURT:**  There's not, is there?  All right.  Here |
| 15 | is what we're going to do. |
| 16 | I'm going to deny the Temporary Restraining Order, but I'm |
| 17 | denying -- and I'm denying the Temporary Restraining Order |
| 18 | because there's not a single thing under oath to support it |
| 19 | because the other side -- because the paperwork is a mess, |
| 20 | because -- and because the Attorney General has sat on their |
| 21 | hands for a long time and they could have brought this to us in |
| 22 | a more orderly way many, many days ago, weeks ago, and instead, |
| 23 | have waited until right now in order to try to do a *fait* |
| 24 | *accompli*.  Well, it's not going to work, so it's denied for all |
| 25 | of those reasons. |

Now, that's without prejudice to a motion for preliminary injunction. If you think you really have a case to set this aside, they can close tonight, if they want. God bless them. But if I feel like you deserve a preliminary injunction, I'm going to make them undo it.

And you lawyers in -- Weissman and Vigdor, you are on notice that you may have to undo this and don't say to me later that it would be unscrambling the egg because you just told me it wasn't.

So I -- I'm -- you may have to undo this later if this -- if the Attorney General's office can get their act together and provide a proper record to undo this.

Now, I can give you this coming Friday as a hearing date, if you would like. But I want you to know, on these papers, you don't even have a motion for preliminary injunction here. There is nothing. So it's your burden.

So I think the proper question is when can you -- if you want, when can you prepare a proper motion -- and, by the way, the other side is going to get to see it. I'm not going to let you have some kind of in chambers Star -- Star Chamber thing. They get to see what they're up against.

When can you file a proper motion for preliminary injunction? Here comes your assistant to give you the answer.

**MR. MOORE:** Three weeks, Your Honor.

**THE COURT:** Three weeks. Fine. Let's figure out the

1  exact date.  Today is number 10; right?  One, two, three --
2  would be the 31st.
3      When do the defendants -- I think given you get three
4  weeks, I'm going to give them two weeks.
5      **MR. WEISSMAN:**  Your Honor, this is Mr. Weissman, Steve
6  Weissman again.
7      Our preference would be to expedite this even more so
8  because if indeed we are not going to close the deal, we would
9  like an expedited proceeding here, and giving California
10 another three weeks --
11     **THE COURT:**  All right.  Well, I think that's fair.
12 Let's say I'm going to give them two weeks.  That's a fair
13 point.  All right.
14     So July 24th is when you've got to make your preliminary
15 injunction motion.  It's got to be a proper motion supported by
16 declarations.  That HHI index thing has all got to be worked
17 out, and it can't just be in the Complaint.  It may even be
18 that your expert has to be deposed.
19     So July 24th, and then we -- how about if I give you one
20 week?  Is that enough for you on the defense side?
21     **MR. WEISSMAN:**  Yes, Your Honor.
22     **THE COURT:**  All right.  So then you will file on
23 July 31st, and then the reply brief will be due on August 7th,
24 and the hearing will be -- can I do it on August 16th,
25 Wednesday?

| | |
|---|---|
| 1 | **THE CLERK:** Yes, you can. |
| 2 | **MR. WEISSMAN:** Sorry, Your Honor. I couldn't hear |
| 3 | that. |
| 4 | **THE COURT:** August 16th, Wednesday, for hearing. |
| 5 | Can you do that? Say 8:00 a.m. |
| 6 | Does that work, Dawn? |
| 7 | **THE CLERK:** It does, Judge, yes. |
| 8 | **THE COURT:** All right. 8:00 a.m. hearing on August |
| 9 | 16th. |
| 10 | **MR. WEISSMAN:** And, Your Honor, will there be -- will |
| 11 | we be able to present live witnesses? |
| 12 | **THE COURT:** I doubt it. I would prefer everything be |
| 13 | done on the papers, but there is a chance that if there is a |
| 14 | fact dispute -- let's just go ahead and -- let's say this. |
| 15 | That if there is a fact dispute that I think -- look at August |
| 16 | 23rd -- |
| 17 | **THE CLERK:** Okay. |
| 18 | **THE COURT:** -- and see if we could come back a week |
| 19 | later for an evidentiary hearing, also at 8:00 a.m. |
| 20 | **THE CLERK:** Yes, you could. |
| 21 | **THE COURT:** All right. This is a contingent date, but |
| 22 | let's hold it. August 23rd would be a second hearing date for |
| 23 | evidentiary hearing in the event that on August 16th, I think |
| 24 | that one is needed. But I don't want -- I don't want to go |
| 25 | into the August 16th thing burdening you to bring witnesses out |

|   |   |
|---|---|
| 1 | here and then it turns out I don't want them here after all. |
| 2 | We'll decide that on the 16th.  And then they would come on the |
| 3 | 23rd and we would have a short evidentiary hearing.  It might |
| 4 | be two to three hours. |
| 5 |     **MR. WEISSMAN:**  And, Your Honor -- |
| 6 |     **THE COURT:**  Yes? |
| 7 |     **MR. WEISSMAN:**  -- I don't mean to interrupt you, but I |
| 8 | do have one other request -- |
| 9 |     **THE COURT:**  Sure. |
| 10 |     **MR. WEISSMAN:**  -- before we adjourn. |
| 11 |     **THE COURT:**  You need to say your name so the court |
| 12 | reporter will know who is talking. |
| 13 |     **MR. WEISSMAN:**  I'm sorry.  This is Steve Weissman. |
| 14 |     **THE COURT:**  Yes.  Mr. Weissman, go ahead. |
| 15 |     **MR. WEISSMAN:**  As you may imagine, during the |
| 16 | investigation, the California AG and the FTC had one-sided |
| 17 | discovery and have a bunch of documents in their possession |
| 18 | from third parties, in addition to what they received from us. |
| 19 | They have not shared those documents with us. |
| 20 |    We're happy to enter a protective order, but in fairness, |
| 21 | we ask that they hand over any documents they received from a |
| 22 | third party in the course of their investigation subject to the |
| 23 | protective order. |
| 24 |    And that we also be allowed to commence and take discovery |
| 25 | to defend ourselves, given that they are the only ones that |

1  have discovery to date.
2          **THE COURT:** Well, I'm not sure about that, but let me
3  ask Mr. Moore.
4      What do you say, Mr. Moore?
5          **MR. MOORE:** So under the statute under which this
6  information -- third -- from the third party is produced, they
7  were guaranteed protections. They need to have an opportunity
8  to come in and protect their information.
9          **THE COURT:** Why don't you give them notice right now.
10         **MR. MOORE:** We can give them notice --
11         **THE COURT:** That all of those third parties are
12 subject to this information being turned over, and if they want
13 to object, they've got to do it within one week from today.
14         **MR. MOORE:** That's fine, Your Honor.
15         **THE COURT:** Mr. Weissman?
16         **MR. VIGDOR:** Your Honor, this is William Vigdor. I
17 was wondering, could we have copies of those notices to third
18 parties so we understand who, as this process comes forward?
19         **THE COURT:** That's a reasonable request. You should
20 give them notice that goes to the third parties.
21         **MR. MOORE:** Yes, Your Honor.
22         **THE COURT:** And I want to say this, too. It's kind of
23 like -- I don't -- you know, you know what you have and they
24 don't know what you have, and I think in fairness, you cannot
25 present a -- if in your -- if you rely upon third-party

evidence, you have to fully disclose everything that's relevant to that third-party evidence. You can't give me a somewhat biased view from the third party. You've got to lay out the pros and the cons that you get, the good and the bad, so that I will not get an unfair picture from the third party.

I don't know how many depositions. I would say maximum two depositions that you all would get because we're dealing with a preliminary injunction. So I'm not going to say you get wide-open discovery, the defendants get wide-open discovery. I just know that's what you're going to try to say later, and if you do that, I'm going to just cut off all discovery.

So you get two depositions and limited document requests, and I do think that the State ought to turn over the documents from the third parties that bear on the issues that we're dealing with after the notice period has run.

What else?

**MR. WEISSMAN:** Your Honor, what about the papers that were filed today?

**THE COURT:** They should give them to you. You should get copies of those.

**MR. WEISSMAN:** Okay. And we will --

**THE COURT:** Wait a second.

Do you have some basis for not turning these papers over to the people you're trying to enjoin?

**MR. MOORE:** The -- there is no -- we're not trying to

17

```
 1   prevent the parties from receiving these papers, but we're
 2   trying to make sure that we conform with our own statutory
 3   duties to make sure we preserve the confidentiality
 4   information.
 5           THE COURT:  What do you want?  A protective order from
 6   me?
 7           MR. MOORE:  That would be helpful.
 8           THE COURT:  You did give me a protective order.
 9           MR. MOORE:  Yes, Your Honor.
10           THE COURT:  Let me see if I can find that.  I don't
11   think -- I've got restraining order.  I didn't get that.
12   Somehow my law clerk has robbed me of my piece of paper.
13       So give me the protective order.  Do you have it with you
14   there?
15       Here, Dawn, can you look through that and see if there is
16   a protective order in there?
17           MR. MOORE:  Here's the protective order, Your Honor.
18           THE COURT:  All right.  I'm going to sign this
19   protective order, but since -- I want everybody to know that I
20   have not vetted it.  And if the lawyers on the defense side --
21   have you vetted this before, you lawyers on the defense side?
22           MR. WEISSMAN:  No.  This is the first we're hearing
23   about a protective order submitted to the Court.
24           THE COURT:  All right.  Well, whenever you get it, if
25   there is something that gives you terrible heartburn, you can
```

|   |   |
|---|---|
| 1 | bring a motion to get it modified.  But I do think we need a |
| 2 | protective order to assist the California side to be able to |
| 3 | share with you the information they want, but I want both sides |
| 4 | to know that conceivably I'm going to modify this in order to |
| 5 | make it more liberal or maybe more restrictive.  I don't know. |
| 6 | And so if you do turn material over, I may turn it over later |
| 7 | on subject to a more loosely-defined protective order.  Okay. |
| 8 |     Here it is back.  I've signed that document.  And now I |
| 9 | don't think you've got any excuse not to let the other side see |
| 10 | what you supplied the Court with. |
| 11 |     Do we have a case number in this case yet? |
| 12 |         **THE CLERK:**  Yes, we do. |
| 13 |         **THE COURT:**  What is the number? |
| 14 |         **THE CLERK:**  17-3786 and then your initials, WHA. |
| 15 |         **THE COURT:**  All right.  So I'm the assigned judge; is |
| 16 | that right? |
| 17 |         **THE CLERK:**  Correct. |
| 18 |         **THE COURT:**  I also happen to be the general duty judge |
| 19 | this month, so I'm not hearing this as general duty.  I'm |
| 20 | hearing it in my role as the assigned judge. |
| 21 |     All right.  I think we've done everything we can do for |
| 22 | today.  Anything more, though, that I may have forgotten? |
| 23 |         **MR. MOORE:**  Not from the State of California. |
| 24 |         **MR. WEISSMAN:**  No, thank you, Your Honor. |
| 25 |         **THE COURT:**  All right.  Good luck to both sides. |

1    Thank you.
2           **MR. VIGDOR:**  Thank you, Your Honor.
3                (Proceedings adjourned at 3:51 p.m.)
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

```
1

2

3                    CERTIFICATE OF REPORTER

4          I certify that the foregoing is a correct transcript

5    from the record of proceedings in the above-entitled matter.

6

7    DATE:   Tuesday, July 11, 2017

8

9    *Pamela A. Batalo*
     _____
10   Pamela A. Batalo, CSR No. 3593, RMR, FCRR
     U.S. Court Reporter
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```